| | |
|---|---|
| A. W., <br><br> Plaintiff, <br><br> v. <br><br> VEER INVESTMENTS, LLC, <br><br> Defendant. | MEMORANDUM & ORDER |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (Doc. No. 4). For the reasons explained below, the Court will deny the motion.

## I. BACKGROUND

This action arises from the alleged sex trafficking of Plaintiff A.W. at Defendant's hotel, the Travel Inn, located at 5115 Reagan Drive, Charlotte, North Carolina. (Doc. No. 1 ¶¶ 1–2). Defendant Veer Investments, LLC, owned and operated the Travel Inn from 2007 until April 4, 2018. *Id.* ¶ 5. Plaintiff alleges the following facts.

In 2015, when Plaintiff was sixteen years old, she met Daniel Thomas online while living in a North Carolina group home. *Id.* ¶¶ 25–26. Thomas, then approximately twenty-three years old, took Plaintiff to the Travel Inn on multiple occasions and commanded her to have sex with numerous men each night. *Id.* ¶¶ 30, 40. Plaintiff was under eighteen years old on every visit to the Travel Inn. *Id.* ¶ 30. Thomas advertised Plaintiff for commercial sex on Backpage.com and directed buyers to the hotel rooms he rented. *Id.* ¶¶ 27–28. He controlled Plaintiff through fraud,

beatings, threats of violence, and heroin. *Id.* ¶¶ 29, 32–33. Thomas used the proceeds from Plaintiff's commercial sex to pay for subsequent nights at the Travel Inn, one day at a time. *Id.* ¶¶ 31, 37. On October 15, 2016, Thomas took Plaintiff to another hotel for arranged commercial sex and was arrested and later pleaded guilty to attempting to promote the prostitution of a minor and to possession of a handgun. *Id.* ¶¶ 52–53.

Thomas was a frequent customer of the Travel Inn and was well known to the staff at the hotel. *Id.* ¶ 38. Plaintiff plainly appeared to be well under 18 when she was at the hotel, and it was clear to hotel employees who saw her that she was underage. *Id.* ¶ 39. When present in the parking lot or common areas, Plaintiff wore provocative and revealing clothing, displayed bruising and scars, appeared to be under the influence of drugs, and kept her head down without speaking to anyone. *Id.* ¶ 51(a)–(b). Thomas arranged for housekeeping to be suspended for Plaintiff's room while continuing to request fresh towels and sheets multiple times. *Id.* ¶ 51(c)–(d). He left trash bags filled with used condoms outside the room, which housekeeping would see and have to dispose of. *Id.* ¶ 51(e). Many men visited Plaintiff's room each night; each drove past the front desk, stayed fifteen to thirty minutes, and then drove past the front desk again upon leaving—all in plain view of hotel employees. *Id.* ¶ 48–49, 92. Thomas would wait outside the room or in the parking lot, visible to staff, while buyers were inside. *Id.* ¶ 50. Staff could also hear Thomas beat and threaten Plaintiff. *Id.* ¶ 9(g). Despite these signs, staff continued to rent Thomas the room. *Id.* ¶ 9(g).

Defendant's own conduct affirmatively facilitated the trafficking. *Id.* ¶ 9. A front desk employee steered Plaintiff and Thomas to areas of the hotel where law enforcement was less likely to appear and where buyers would draw less attention. *Id.* ¶ 9(a). Defendant maintained policies permitting day-by-day cash payments, suspended housekeeping, repeated linen exchanges without question, and entry and exit without identification checks. *Id.* ¶ 72(c), (d), (f), (g). Defendant also maintained a ten-minute refund policy that allowed it to retain rental fees from guests who used rooms only briefly for commercial sex. *Id.* ¶ 59.

Defendant had extensive prior notice of criminal activity at the Travel Inn. Between March 2013 and October 2016, the Charlotte-Mecklenburg Police Department responded to at least seventy-eight reported crimes at the hotel, including forcible rape, human trafficking, a missing minor, kidnappings, robberies, and assaults. *Id.* ¶¶ 69–71. In 2013, federal and local authorities conducted a four-month operation called "Operation Heartbreak Hotel," targeting the Sugar Creek corridor where the Travel Inn is located, which received wide local media coverage. *Id.* ¶¶ 61–62. A police captain publicly warned that minors could be among trafficking victims in the corridor. *Id.* ¶ 68. Online guest reviews dating back to 2006 described drug raids, prostitution, and fear for personal safety at the property, and the hotel's own general manager replied to several of those reviews. *Id.* ¶¶ 56–57.

Plaintiff filed suit in this Court on February 27, 2026, bringing claims for violation of the Trafficking Victims Protection Act ("TVPA"), specifically, 18 U.S.C. § 1591, and premises liability. *Id.* ¶¶ 101–116.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570; *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cnty. N. Carolina*, 22 F.4th 412, 416 (4th Cir. 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6)

determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## III. DISCUSSION

### A. TVPRA Beneficiary Liability — 18 U.S.C. § 1595

Defendant first moves to dismiss on the basis that Plaintiff has not alleged she was sex trafficked within the meaning of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (Doc. No. 4-1 at 8). The Fourth Circuit has not specified a standard for beneficiary liability under the TVPRA. Therefore, the Court will apply the 11th Circuit's four-part test that other courts have adopted, requiring that the defendant:

> (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 719, 726 (11th Cir. 2021); *see also Doe v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 (E.D.N.C. 2024).

Plaintiff asserts facts that plausibly state a claim for beneficiary liability. As to the first two elements, Plaintiff claims Defendant knowingly benefited by collecting room-rental revenue paid from the proceeds of Plaintiff's commercial sex. (Doc. No. 1 ¶¶ 31, 101(c)). Further, Plaintiff alleges Defendant participated in the venture through facilitation well beyond passive rental. For example:

- a front-desk employee steered Thomas to low-visibility areas of the property to avoid law enforcement detection, *id.* ¶ 9(a);

5

- Defendant suspended housekeeping while supplying fresh linens on demand, *id.* ¶ 51(c)–(d);
- staff collected trash bags of used condoms, *id.* ¶ 51(e); and
- Defendant continued renting to a known, frequent customer despite observable signs of trafficking, *id.* ¶¶ 38, 72.

The third element "is that the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff." *Doe #1*, 21 F.4th at 725. Section 1591(a) criminalizes sex trafficking either where force, threats of force, fraud, or coercion is used or where the victim "has not attained the age of 18 years." 18 U.S.C. § 1591(a). A minor cannot consent to commercial sex, and no showing of force, fraud, or coercion is required when the victim is under eighteen. *Id.* Plaintiff alleges she was under eighteen on every visit to the Travel Inn. (Doc. No. 1 ¶ 30). The Court accepts this allegation as true, and Plaintiff has alleged sufficient facts to satisfy the third element, *i.e.*, that the venture in which Defendant participated violated the TVPRA as to Plaintiff.

The fourth element—Defendant's actual or constructive knowledge of a violation of the TVPRA as to Plaintiff—is likewise sufficiently pleaded. The combination of a visibly underage girl displaying bruises, audible beatings, a steady parade of male visitors staying fifteen-to-thirty minutes each, suspended housekeeping with repeated linen requests, discarded condoms, a loitering trafficker, day-by-day cash payments, and affirmative steering by staff to less-visible hotel locations, all alleged by Plaintiff, plausibly establishes that Defendant did know or should have known Plaintiff was the person being trafficked.

### B. Premises Liability

Defendant next argues that Plaintiff's claims for negligence and gross negligence should be dismissed for failure to adequately plead premises liability. (Doc. No. 4-1 at 15). North Carolina recognizes that a business owner owes its invitees a duty of ordinary care to protect them from foreseeable criminal acts of third parties. *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638–40 (1981). Foreseeability can be established by prior criminal incidents on the premises. *Id.* at 642. The North Carolina Supreme Court in *Foster* held that thirty-one prior criminal incidents over the course of a year were sufficient to submit the question of foreseeability to a jury:

> We cannot hold as a matter of law that the thirty-one criminal incidents reported as occurring on the . . . premises within the year preceding the assault on plaintiff were insufficient to charge defendants with knowledge that such injuries were likely to occur. The issue of foreseeability should therefore be determined by the jury.

*Id.* Plaintiff here alleges seventy-eight reported crimes at the Travel Inn over roughly three years, including forcible rape and human trafficking. (Doc. No. 1 ¶ 69). The Court finds the Complaint alleges sufficient facts at this early stage as to foreseeability on the part of Defendant.

Plaintiff further pleads that Defendant affirmatively created and maintained the dangerous condition by enacting policies designed to attract and conceal criminal activity. *Id.* ¶ 72. A landowner who creates a dangerous condition on its own premises breaches the ordinary duty of care. *See, e.g.*, *Asher v. Huneycutt*, 876 S.E.2d 660, 668 (N.C. Ct. App. 2022). Thus, Plaintiff has stated a plausible premises liability claim.

7

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. 4) is **DENIED**; and

2. This case shall **proceed toward trial on the merits** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Matthew E. Orso
United States District Judge